# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| Crop Production Services, Inc., ) | Civil Action No. 5:13-02841-JMC |
| ) | |
| Appellant, ) | |
| v. ) | |
| ) | |
| SCBT, N.A. f/k/a South Carolina Bank and ) | **ORDER AND OPINION** |
| Trust, N.A., Helena Chemical Company, ) | |
| Blakes Service Center, Meherrin ) | |
| Agricultural and Chemical Company, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

This matter is before the court by way of an appeal by Appellant Crop Production Services, Inc. ("CPS"), from an order filed on July 31, 2013 (the "July Order") by the United States Bankruptcy Court for the District of South Carolina (the "Bankruptcy Court"). (See ECF No. 5-2.) In the July Order, the Bankruptcy Court was tasked with determining the value and priority of lien creditors in regard to three (3) parcels of real property located in Orangeburg, South Carolina (the "Property"). Specifically, the Bankruptcy Court determined that (1) Appellee SCBT, N.A. ("SCBT") has first priority interest in the Property, (2) Appellee Helena Chemical Company ("HCC") has second priority interest in the Property, and (3) CPS has the third priority interest in the Property. (Id. at 13, 17.)

On October 18, 2013, CPS filed a notice to appeal the July Order to this court. (ECF No. 1.) For the reasons set forth below, the court hereby **AFFIRMS** the July Order and **DISMISSES** CPS's appeal. (ECF Nos. 1, 5-2.)

## I.     RELEVANT BACKGROUND TO THE APPEAL

The Bankruptcy Court provided detailed findings of fact in the July Order. (See ECF No. 5-2 at 3-7.) This court will not set aside the Bankruptcy Court's factual findings unless clearly

1

erroneous. The court will only reference herein background facts that are pertinent to the analysis of the issues on appeal.

Debtor Wesley O'Neal Davis ("Davis"), a farmer, and together with his wife, Mary Jane Davis ("Wife"), are the owners of the Property. (ECF No. 3-1 at 2.) The combined value of the Property is $423,000.00. (Id. at 3 ¶ 5.)

On or about June 2, 2005, Davis and his Wife executed a Note in favor of SCBT in the amount of $191,375.00 ("2005 Note"). (Id. at 10-12.) Davis and his Wife also executed a mortgage, which was recorded on June 9, 2005, wherein they pledged the Property to SCBT as security for the 2005 Note ("2005 Mortgage"). (Id. at 13-20.) As of October 24, 2011, SCBT alleged that the amount owed on the 2005 Note was $132,597.31. (ECF No. 10 at 6.)

On March 14, 2007, Davis executed a Note in favor of SCBT in the amount of $138,600.00 ("2007 Note"). (ECF No. 3-1 at 32-33.) An Addendum for Security Documents was executed contemporaneous with the 2007 Note and outlines the security pledged to secure the 2007 Note. (Id. at 34.) Included in the pledge is the 2005 Mortgage. (Id.) As of April 13, 2012, SCBT alleged that the balance owed on the 2007 Note was $98,655.79. (ECF No. 10 at 6.)

On May 6, 2008, Davis executed a Note in favor of SCBT in the amount of $316,000.00 ("2008 Note"). (ECF No. 3-1 at 21-22.) Davis and his Wife executed a mortgage on May 6, 2008, pledging the Property to SCBT as security for the 2008 Note ("2008 Mortgage"). (Id. at 23-31.) The 2008 Mortgage was recorded on May 19, 2008. (Id. at 23.) As of January 18, 2012, SCBT alleged that the amount owed on the 2008 Note was $125,814.59. (ECF No. 10 at 7.)

On or about January 29, 2010, the Court of Common Pleas for Orangeburg County, South Carolina entered judgment against Davis and Davis Farms in favor of CPS in the amount

of $98,711.15, which judgment was recorded on March 5, 2010. (ECF No. 4-6 at 3-5.)

As a result of Davis' failure to meet his financial obligations, SCBT initiated a foreclosure action against the Property on or about January 4, 2011. (ECF No. 3-1 at 36 ¶ 2.) SCBT named Davis, his Wife, CPS, HCC, and Meherrin Agricultural and Chemical Company ("Meherrin") as defendants in the foreclosure action. A hearing was held before the Master in Equity for Orangeburg County, South Carolina on September 6, 2011. (Id. at 36.) Following the September 6th hearing, the Master in Equity entered a Master's Order and Judgment of Foreclosure and Sale (the "Master's Order") in favor of SCBT. (Id. at 35-47.) In the Master's Order, the Master found that the claims of SCBT had priority over the claims of CPS, HCC, and Meherrin. (Id. at 40 ¶¶ 26-27, 41 ¶ 28.) The Master executed the Master's Order on September 6, 2011 and filed it on September 8, 2011. (Id. at 35.) None of the parties in the action at equity appealed the Master's Order.

On or about September 28, 2011, Davis filed Chapter 12 Bankruptcy.[1] (ECF No. 1 (Case No. 11-06003-dd (Bankr. D.S.C. Sept. 28, 2011)).) SCBT, CPS, HCC, Meherrin, and Blakes Service Center ("BSC") (collectively "Creditors") filed claims against the bankruptcy estate. (See, e.g., ECF No. 6-1 (Case No. 11-06003-dd (Bankr. D.S.C. Sept. 30, 2011)).) Davis initiated an adversary proceeding on July 27, 2012, and filed a complaint against the Creditors, seeking "to determine Order and Priority of Liens and to Establish Value of Liens." (ECF No. 3-1 at 1-9.) SCBT, CPS, and HCC answered the complaint. (ECF Nos. 3-2, 3-3, 3-4.) BSC and Meherrin failed to answer or otherwise respond to the complaint and the Bankruptcy Court entered default judgment against them. (ECF No. 3-7.)

---

[1] Chapter 12 governs bankruptcy for farmers and fishermen, and provides more generous exemption allowances, allowing farmers and fishermen to keep enough assets to continue farming or fishing as their livelihood. See 11 U.S.C. §§ 1201-1208, 1221-1231.

3

On January 4, 2013, SCBT moved for summary judgment on the issue of the priority of its claims, which motion was opposed by CPS. (ECF Nos. 3-8, 3-9.) The Bankruptcy Court held a hearing on January 22, 2013, after which it granted summary judgment to SCBT on April 3, 2013, finding that the 2007 Note was secured by the 2008 Mortgage. (ECF No. 3-10.) CPS disagreed with the Bankruptcy Court and moved for reconsideration. (ECF No. 4-1.) On May 14, 2013, the Bankruptcy Court granted CPS's motion for reconsideration and ordered the matter to be set for trial on June 11, 2013. (ECF No. 44 (Adversary Compl. No. 12-80190-dd (Bankr. D.S.C. May 14, 2013)).)

On June 11, 2013, the Bankruptcy Court conducted a trial regarding the issues relevant to SCBT's motion for summary judgment. (ECF No. 50 (Adversary Compl. No. 12-80190-dd (Bankr. D.S.C. June 11, 2013)).) Testimony was presented by Davis, his Wife, and two (2) employees of SCBT, Katie Hane and Larry Windham, who were involved with the subject transactions. At the close of evidence, CPS moved to amend its answer to add the affirmative defense of "unclean hands," averring that because an attorney was not involved in the 2007 Note, SCBT should not be able to benefit from this omission. (See ECF No. 5-1 at 2.) On July 31, 2013, the Bankruptcy Court entered its July Order, awarding SCBT priority, and denying CPS's motion to amend. (ECF No. 5-2.) Thereafter, CPS timely appealed the July Order to this court. (ECF No. 1.)

## II.   LEGAL STANDARD

A.   <u>Bankruptcy Appeals</u>

A district court has jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. § 158; <u>see</u>, <u>e.g.</u>, <u>In re Kirkland</u>, 600 F.3d 310, 314 (4th Cir. 2010) (noting district court's "capacity as a bankruptcy appellate court"). "[T]he district court . . . may affirm,

modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The standard of review of a bankruptcy appeal by a district court is the same as when a court of appeals reviews a district court proceeding. See 28 U.S.C. § 158(c)(2). Accordingly, the bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard. Fed. R. Bankr. P. 8013. A finding of fact is clearly erroneous when the entire record demonstrates convincingly to the reviewing court that "a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); United States v. Hall, 664 F.3d 456, 462 (4th Cir. 2012). A bankruptcy court's conclusions of law are subject to de novo review. In re Biondo, 180 F.3d 126, 130 (4th Cir. 1999); In re K & L Lakeland, Inc., 128 F.3d 203, 206 (4th Cir. 1997).

B.      The Rules of Contract Construction

"The main guide in contract interpretation is to ascertain and give legal effect to the intentions of the parties as expressed in the language of the [contract]." Gilbert v. Miller, 586 S.E.2d 861, 864 (S.C. Ct. App. 2003). "In ascertaining intent, the court will strive to discover the situation of the parties, along with their purposes at the time the contract was entered." M & M Group, Inc. v. Holmes, 666 S.E.2d 262, 266 (S.C. Ct. App. 2008) (internal quotations omitted). Where an agreement is clear on its face and unambiguous, the court's only function is to interpret its meaning and the intent of the parties as found within the agreement. First S. Bank v. Bank of the Ozarks, C/A No. 9:11-cv-2587-RMG, 2012 WL 3597665, at *6 (D.S.C. Aug. 20, 2012) (citing Miles v. Miles, 711 S.E.2d 880, 883 (S.C. 2011)). However, if the agreement is ambiguous, "parol and other extrinsic evidence will be admitted to determine the intent of the parties." Harris v. Ideal Solutions, Inc., 682 S.E.2d 523, 526 (S.C. Ct. App. 2009) (internal quotations omitted). Further, in interpreting an ambiguous contract, the court may consider any

5

applicable rules of construction, as "[t]he purpose of all rules of construction is to ascertain the intention of the parties to the contract." Hansen ex rel. Hansen v. United Servs. Auto, Ass'n, 565 S.E.2d 114, 116 (S.C. Ct. App. 2002). "An agreement is ambiguous if it is susceptible to more than one interpretation or its meaning is unclear." Miles, 711 S.E.2d at 883.

C.     Motions to Amend Pursuant to Fed. R. Civ. P. 15(b)

Rule 15(b)(1) of the Federal Rules of Civil Procedure allows a party to amend the pleadings to conform to evidence presented at trial unless the objecting party can show prejudice. Fed. R. Civ. P. 15(b)(1). Subsection (b) of Rule 15 applies only to amendments during and after trial. CoStar Realty Info., Inc. v. Field, 737 F. Supp. 2d 496, 503 (D. Md. 2010) (citation and quotation marks omitted).

### III.     ANALYSIS

CPS raises three (3) issues on appeal. First, CPS argues that the Bankruptcy Court erred in finding that the 2007 Note signed solely by Davis was secured by the 2008 Mortgage signed by Davis and his Wife. Second, CPS argues that the Bankruptcy Court erroneously found that CPS was on constructive notice that the 2008 Mortgage secured the 2007 Note. Finally, CPS challenges the Bankruptcy Court's refusal to grant CPS's motion to amend its answer to include the defense of unclean hands based upon SCBT's unauthorized practice of law regarding the 2007 Note. (ECF No. 9 at 4, 6, 8.)

A.     CPS's Position

CPS argues that the Bankruptcy Court erroneously found that the following language in the 2008 Mortgage was sufficient to secure the 2007 Note: "The term 'Secured Debt' includes, but is not limited to, the following: . . . [a]ll obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law . . . ." (Id. at 7 (citing ECF No. 5-2 at

10).)  In support of this argument, CPS points out that "Mortgagor" is defined in the 2008 Mortgage as Davis and Wife and the 2007 Note only identifies Davis as the borrower and the sole signatory.  (Id. at 9 (citing ECF No. 3-1 at 23, 32).)  As a result, CPS asserts that the 2008 Mortgage can only be read to apply to the obligations of both Davis and his Wife, and not Davis or his Wife.  Therefore, CPS urges the court to find that the unambiguous language of the 2008 Mortgage requires reversal of the Bankruptcy Court's July Order.

CPS next argues that the Bankruptcy Court erred in allowing testimony at the June 11, 2013 trial, regarding the intent behind the 2008 Mortgage.  (Id. at 10.)  In this regard, CPS argues that the recorded documents, i.e., the 2005 Mortgage and 2008 Mortgage, are controlling regarding its rights with respect to the Property and the subjective intent of the parties is unnecessary and irrelevant.  (Id. (citing Murrells Inlet Corp. v. Ward, 662 S.E.2d 452, 457 (S.C. Ct. App. 2008) ("It would now be unfair to deny MIC the right to the full use and enjoyment of the easement as indicated in the plat, regardless of what Ward now argues were her intentions at the time the plat was recorded. Subsequent purchasers are entitled to rely on recorded deeds and plats to determine their rights in respect to property.")  Moreover, CPS disagrees with the Bankruptcy Court's finding that Davis's subsequent creditors had constructive notice that the 2007 Note was properly secured by the 2008 Mortgage.  (Id. at 11 (referencing ECF No. 5-2 at 11-12).)

Finally, CPS argues that the Bankruptcy Court erred in not allowing CPS to amend its answer to add the defense of unclean hands.  (Id. at 12.)  Specifically, CPS argues that it should be allowed to assert the defense of unclean hands to defeat the equitable remedy of reformation, which reformation occurred when "the Bankruptcy Court found that the written words of the 2008 Mortgage did not accurately reflect or conform with the alleged intent of the parties."  (Id.

7

at 13.)  In support of these arguments, CPS asserts that the Bankruptcy Court failed to recognize that it had provided the equitable remedy of reformation to SCBT and further failed to understand that SCBT's improper conduct affected its ability to seek such an equitable remedy.[2] (Id.)

B.     SCBT's Position

SCBT opposes this appeal, asserting that CPS is judicially estopped from taking the position that the subject mortgages unambiguously do not secure the 2007 note, which position was not asserted by CPS in the Bankruptcy Court.  (ECF No. 10 at 11.)  In response to CPS's assertion that the definition of "Mortgagor" limits application of the 2008 Mortgage to the 2007 Note, SCBT contends that the 2008 Mortgage does not identify Mortgagor as "Davis and Wife, jointly" and "[t]he absence of 'jointly' demonstrates that no such limitation is placed upon their designation."  (Id. at 13 (referencing ECF No. 5-2 at 10 n.4).)  SCBT further contends that CPS's contentions regarding the intent testimony allowed by the Bankruptcy Court inappropriately

---

[2] CPS describes SCBT's improper conduct as follows:

> During the trial of this case, the facts associated with Mr. Davis'[s] execution of the 2007 Note were first disclosed.  During his direct examination, Mr. Davis mentioned that he had signed the 2007 Note at the bank.  Upon cross examination, Mr. Davis testified that his usual attorney was not present during the execution of the 2007 Note and he did not believe that any attorney supervised this closing. When the witnesses for SCBT took the stand, they testified that the 2007 Note was a legal document in connection with a mortgage, specifically the 2005 Mortgage.  They admitted that no attorney supervised the closing.  They even freely testified as to the advice that they gave to both Mr. Davis and Mrs. Davis concerning the legal meaning and interpretation of the documents being signed. The representatives of SCBT acknowledged that they prepared all of the legal documents and even had some of the legal documents recorded.

(ECF No. 5-1 at 2 (citing, e.g., Matrix v. Frazer, 714 S.E.2d 532, 534 (S.C. 2011) ("real estate and loan closings must be supervised by an attorney" and "[p]erforming a title search, preparing title and loan documents, and closing a loan without the supervision of an attorney constitutes the unauthorized practice of law.")).)

8

mischaracterize the July Order, which correctly found that the 2005 Mortgage and 2008 Mortgage provide appropriate constructive notice to the public. (Id. at 14-15.) Finally, SCBT argues that the Bankruptcy Court appropriately denied CPS's motion to amend to add the defense of unclean hands based on futility, undue delay, and undue prejudice. (Id. at 18-21.)

C.     The Court's Review

   *1. The Bankruptcy Court did not err in finding that the language in the 2008 Mortgage was sufficient to secure the 2007 Note.*

In concluding that the 2007 Note signed by Davis was secured by the 2008 Mortgage signed by Davis and his Wife, the Bankruptcy Court reasoned that (1) "Mortgagor" was not defined in the 2008 Mortgage as Davis and his Wife jointly and (2) the 2008 Mortgage contained the following definition of "Secured Debt" that contemplated the securing of existing debts:

> SECURED DEBT DEFINED. The term "Secured Debt" includes, but is not limited to, the following: A. The promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt) (e.g., borrower's name, note amount, interest rate, maturity date): NOTE DATED 05-06-2008 I/N/O WESLEY O'NEAL DAVIS WITH A MATURITY DATE OF 05-06-2015. B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage whether or not this Mortgage is specifically referred to in the evidence of debt. C. All obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender. D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Mortgage, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt. E. Mortgagor's performance under the terms of any instrument evidencing a debt by Mortgagor to Lender and any Mortgage securing, guarantying, or otherwise relating to the debt. If more than one person signs this Mortgage as Mortgagor, each Mortgagor agrees that this Mortgage will secure all future advances and future obligations described above that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. This Mortgage will not secure any other debt if Lender fails, with respect to such other debt, to make any required disclosure about this Mortgage or if Lender fails to give any required notice of the right of rescission.

(ECF No. 5-2 at 10-11 (referencing ECF No. 3-1 at 24 ¶ 4)).)  Specifically, the Bankruptcy Court found that the 2007 Note was secured by the Property because the 2008 Mortgage applied to "[a]ll obligations Mortgagor owes to Lender, which now exist or may later arise . . . ."  (ECF No. 5-2 at 10 (referencing ECF No. 3-1 at 24 ¶ 4(C)).)

After careful review and consideration of the record, the court agrees with the Bankruptcy Court and finds that the plain meaning of "Secured Debt" in the 2008 Mortgage unambiguously secures the 2007 Note with Davis's interest in the Property.  In reaching this finding, the court relies on both the plain language of the 2008 Mortgage in addition to the general principle in lending that a mortgage or deed must be signed by all those in title to the property, but a note is only signed by the person or persons who are agreeing to pay the debt. The fact that SCBT failed to identify Davis's Wife in the 2007 Note only establishes that she is not legally obligated to pay back the amount owed on 2007 Note through her interest in the Property.  See, e.g., U.C.C. § 3-401(a) (2004) ("A person is not liable on an instrument unless (i) the person signed the instrument, . . . ."); Green v. Spires, 50 S.E. 554, 556 (S.C. 1905) ("A promissory note is a written engagement by one person to pay another absolutely and unconditionally a certain sum of money at a time specified therein.") (citation omitted).  As a result, the court is not persuaded by CPS that Davis's Wife had to be a signatory on the 2007 Note in order for that debt to be secured by the 2008 Mortgage.  Therefore, the court finds after de novo review that the Bankruptcy Court appropriately concluded that the language in the 2008 Mortgage was sufficient to secure the 2007 Note resulting in all three (3) of SCBT's liens having priority over CPS's judgment lien.[3]

---

[3] Also, in reaching this conclusion, the Bankruptcy Court found that it was unnecessary to decide whether the 2005 Mortgage secured the 2007 Note.  (ECF No. 5-2 at 10-11.)  The court agrees with the Bankruptcy Court and adopts its conclusion in this regard.

> *2. The Bankruptcy Court did not err in finding that the 2008 Mortgage provided constructive notice to CPS regarding the 2007 Note.*

The Bankruptcy Court found that the 2008 Mortgage provided constructive notice to subsequent lien holders that it secured existing debts including the 2007 Note. (ECF No. 5-2 at 11-12.) Specifically, the Bankruptcy Court observed that "[t]hrough the exercise of reasonable diligence, a creditor who sees this [2008] [M]ortgage could contact SCBT to find out if there are other obligations owed by the mortgagors besides the note executed contemporaneously with the respective mortgage." (Id. at 12.)

"Constructive notice is a legal inference which substitutes for actual notice." Strother v. Lexington Cnty. Recreation Comm'n, 504 S.E.2d 117, 112 n.6 (S.C. 1998) (citation omitted). "It is notice imputed to a person whose knowledge of facts is sufficient to put him on inquiry; if these facts were pursued with due diligence, they would lead to other undisclosed facts." Id. "[C]onstructive notice or inquiry notice in the context of a real estate transaction often is grounded in an examination of the public record because it is the proper recording of documents asserting an interest or claim in real property which gives constructive notice to the world." Ten Woodruff Oaks, LLC v. Point Dev., LLC, 683 S.E.2d 510, 515 (S.C. Ct. App. 2009) (citing Spence v. Spence, 628 S.E.2d 869, 876 (S.C. 2006)). Constructive notice, however, is not limited to what is ascertainable from consulting public records. Id.

In Spence, the South Carolina Supreme Court explained that "[c]onstructive or inquiry notice in the context of a real estate transaction also may arise when a party becomes aware or should have become aware of certain facts which, if investigated, would reveal the claim of another." Spence, 628 S.E.2d at 876. "The party will be charged by operation of law with all knowledge that an investigation by a reasonably cautious and prudent purchaser would have revealed." Id. In making these statements, the court emphasized that "'the principle that the

11

party is bound to the exercise of due diligence, and is assumed to have the knowledge to which that diligence would lead him, . . . .'" Id. (quoting Black v. Childs, 14 S.C. 312, 321–22 (1880)); see also Nat'l Bank of Newberry v. Livingston, 152 S.E. 410, 417 (S.C. 1930) ("A person affected by the constructive notice which the record of a mortgage or declaration of trust affords, is chargeable with knowledge of all such facts as are specifically set forth or recited in the instruments recorded, including the legal consequences and effect of its various provisions, and also according to some of the authorities, of all such facts as would have been disclosed by a proper investigation, starting from the mortgage as a point of departure . . . .") (quoting 41 C. J. 562).

Because constructive notice is not necessarily confined to the public record, the court finds that a reasonable investigation of the 2008 Mortgage given by Davis and his Wife to SCTB would provide constructive notice of the 2007 Note. A creditor would need to perform its due diligence if the Property was being used as security since the 2008 Mortgage had a maximum principal amount of $316,000.00 and the Property was valued at $423,000.00. As a result of the foregoing, the court concludes that the Bankruptcy Court did not err in finding that the 2008 Mortgage provided constructive notice to CPS regarding the 2007 Note.

3.  *The Bankruptcy Court did not err in denying CPS's motion to amend its answer.*

The Bankruptcy Court denied a motion by CPS to amend its answer to assert an affirmative defense of unclean hands based on allegations that SCBT engaged in the unauthorized practice of law when it closed the 2007 Note without an attorney's participation. In reaching this decision, the Bankruptcy Court concluded that it would be inappropriate to apply unclean hands to render the 2007 Note unsecured when the South Carolina Supreme Court did not hand down the ruling requiring an attorney to supervisor all real estate and mortgage loan closings until August 8, 2011. (ECF No. 5-2 at 15-16 (citing Matrix Fin. Servs. Corp. v. Frazer,

714 S.E.2d 532, 534 (S.C. 2011) ("Performing a title search, preparing title and loan documents, and closing a loan without the supervision of an attorney constitutes the unauthorized practice of law.")).) Therefore, the Bankruptcy Court denied CPS's motion to amend its answer because it considered the amendment futile. (Id. at 17.)

Upon review, the court finds that the following statement from the South Carolina Supreme Court explains that Matrix does not have retroactive application to the circumstances surrounding the 2007 Note:

> In Matrix we reiterated that the closing of a loan without attorney supervision constitutes the unauthorized practice of law. Furthermore, we held that engaging in this unlawful behavior would preclude a lender from obtaining equitable relief. Id. at 140, 714 S.E.2d at 535. However, in a substitute opinion issued on rehearing, we explained that this holding would be prospective only, stating we would "apply this ruling to all filing dates after the issuance of this opinion," which was August 8, 2011. Id. To the extent some confusion apparently exists as to what filing date Matrix referred to, we clarify now that it is the date the document a party seeks to enforce was filed. Here, Systems' mortgage was recorded on April 20, 2007, well before the issuance of Matrix. Thus, regardless of whether an attorney participated in the closing of Mortgage 2, BAC would not be barred from recovery by the illegality.

BAC Home Loan Servicing, L.P. v. Kinder, 731 S.E.2d 547, 549-50 (S.C. 2012). Similarly, because the 2007 Note is dated March 14, 2007, the court agrees with the Bankruptcy Court that Matrix would not render the 2007 Note unsecured based on an affirmative defense of unclean hands. Therefore, the court concludes that the Bankruptcy Court did not err in denying CPS's motion to amend its answer to add the affirmative defense of unclean hands based on the futility of retroactive application of Matrix.

## IV.    CONCLUSION

For the foregoing reasons, the court hereby **AFFIRMS** the order issued by the Bankruptcy Court on July 31, 2013 and **DISMISSES** the appeal of Crop Production Services, Inc. (ECF Nos. 1, 5-2.)

**IT IS SO ORDERED.**

*/s/ J. Michelle Childs*

United States District Judge

May 6, 2014
Columbia, South Carolina